IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Peter V., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) Case No.: 22-cv-50306 ) ) Magistrate Judge Margaret J. Schneider |
| Leland Dudek, Acting Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, Peter V., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

    On April 3, 2016, Peter V. ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on December 4, 2015. R. 320. His application was denied initially, upon reconsideration, and by decision of Administrative Law Judge ("ALJ") dated September 19, 2018. R. 333. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 6-9. Plaintiff sought judicial review and Magistrate Judge William Duffin remanded the case to the Appeals Council. R. 3174-3175. The Appeals Council then remanded the case to an Administrative Law Judge for further administrative proceedings. R. 3179-3182.

    On remand, ALJ Noceeba Southern held a telephonic hearing on June 23, 2020. R. 3043. Plaintiff, represented by counsel, appeared and testified. *Id.* Stephanie R. Archer, an impartial vocational expert ("VE"), also appeared and testified. *Id.* On July 9, 2020, the ALJ issued a written opinion denying Plaintiff's claims for disability and disability insurance benefits. R. 3043-3068. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. 1929-1944. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion for summary judgment [13], the Commissioner's cross-motion for

---

[1] Leland Dudek has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

summary judgment and response to Plaintiff's motion for summary judgment [15], and Plaintiff's reply brief [16].

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 4, 2015. R. 3045. At step two, the ALJ found that Plaintiff had the following severe impairments: decrease in normal lordosis of the lumbar spine with minimal thoracic degenerative disc disease, obesity, Crohn's disease, diabetes mellitus II, post-traumatic stress disorder, depression, anxiety with panic attacks, and autism spectrum disorder. R. 3045-3046. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R. 3046. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 3046-3048.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except with a sit/stand option every hour for 2-3 minutes while remaining on task; occasional climbing of ramps and stairs; avoid ladders, ropes, and scaffolds; occasionally balance, stoop, crawl, kneel; frequently crouch; frequent handling with the bilateral upper extremities; frequently reach in all directions with the bilateral upper extremities; capable of simple routine tasks, with no fast pace work or strict production procedures and occasional decision-making in order to provide for low stress; avoid tandem work; occasional but superficial interaction (superficial being that which is beyond the performance of job duties and job functions for a specific purpose and for a short duration) with co-workers and supervisors; avoid public interaction; no over-the-shoulder supervision, and avoid positions requiring conflict resolution or persuasion skills. R. 3048-3067. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 3067. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 3067-3068. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from December 4, 2015, through the date of decision, July 9, 2020. R. 3068.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An

2

ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly evaluating: (1) the medical opinion evidence, (2) the Department of Veterans Affairs' ("VA") disability determination; and (3) Plaintiff's subjective symptoms.[2] Plaintiff also claims that remand is required for consideration of new evidence. As detailed below, the Court finds that the ALJ properly evaluated the medical opinions, the VA's disability determination, and Plaintiff's subjective symptoms. Additionally, after reviewing the new evidence submitted to the Appeals Council, the Court finds no reasonable probability that the new evidence would change the ALJ's decision. Therefore, the Court affirms the Commissioner's decision.

**Medical Opinions**

As relevant to Plaintiff's claims, the ALJ evaluated the medical opinions of two treating psychiatrists and two examining psychologists. Dr. Britton, one of the treating psychiatrists, filled out a "Mental Impairment Questionnaire" for Plaintiff on March 1, 2017, and on May 1, 2018. R. 1163-1167, 1789-1793. The ALJ gave both little weight. R. 3061. The other treating psychiatrist, Dr. Pakula-Haller, filled out the same questionnaire on November 23, 2016. R. 792-796. The ALJ gave this opinion very little weight. The examining psychologists, Dr. Phelps and Dr. Ryser, each completed a psychological evaluation of Plaintiff and filled out the same questionnaire as the treating psychiatrists. R. 1210-1221, 4298-4312. The ALJ gave Dr. Phelps's opinions very little weight. R. 3063. The ALJ gave Dr. Ryser's functional capacity assessment some weight but gave very little weight to Dr. Ryser's questionnaire. R. 3064-3066.

Plaintiff's claim was filed before March 27, 2017, so the ALJ had to evaluate the medical opinions according to the "treating physician" rule. 20 C.F.R. § 404.1527(c)(2). The rule requires ALJs "to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (quoting 20 C.F.R. § 404.1527(c)(2)). If an ALJ denies a treating physician's opinion controlling weight, the ALJ still must consider the opinion's persuasiveness after evaluating statutory factors, such as specialization, supportability, and consistency. 20 C.F.R. §

---

[2] Plaintiff does not appeal the ALJ's determination of his physical limitations. Accordingly, this review is limited to the ALJ's determination of Plaintiff's mental limitations.

3

404.1527(c)(2). The ALJ also uses these statutory factors to determine how much weight to give opinions from non-treating sources. *Id.* "If the ALJ discounts the [medical source's] opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulate[d]' [her] reasons – a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). *See also Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023).

The ALJ adequately explained the weight she gave each medical opinion. She found that Dr. Britton's 2017 opinion could not be given much weight due to the lack of "objective evidence from this provider," the reliance on Plaintiff's own reports, and the marking of many limitations as "unknown." R. 3061. She also noted that the limitations purported in the questionnaire "related back to 12/04/15, which is well before the provider saw the claimant" and that the claimant sought out Dr. Britton "for the sake of [a] disability report." *Id*. Similarly, the ALJ gave little weight to Dr. Britton's 2018 opinion because the psychiatrist did not support the opinion "with evidence from [the doctor's] own treatment," in addition to the "obvious problem" that the purported limitations dated back to 2011 even though the psychiatrist did not treat the claimant until 2016. R. 3061, 1789. Despite giving the opinions little weight, the ALJ did consider both opinions as supporting some limitations. R. 3061-3062. The ALJ gave Dr. Pakula-Haller's opinion very little weight because the purported limitations were "inconsistent with the doctor's own mental status exam findings" and there was "no objective support for the extent of limitations" checked on the questionnaire. R. 3062. The ALJ also considered the fact that Dr. Pakula-Haller provided "no real rationale for the limitations checked." *Id*. The ALJ gave Dr. Phelps's opinions very little weight due to his reliance on Plaintiff's own reports "as opposed to the behavioral observations at the evaluation." R. 3063. She found that the extent of limitations indicated was "not supported by the exam findings herein nor supported by other objective evidence in the record and [was] contradicted by the claimant's own reports of improved symptomology with treatment." *Id*. The ALJ gave Dr. Ryser's functional capacity assessment some weight, addressing the limitations supported by objective evidence in the Plaintiff's residual functional capacity. R. 3065. She gave Dr. Ryser's questionnaire very little weight because it suggested limitations "greater than treating providers, mention[ed] physical health limitations beyond her experience," and relied on "claimant's self-reports over objective findings." R. 3066.

Plaintiff claims that the ALJ improperly discredited these medical opinions because they used definitions that are "not compatible with social security disability standards set forth in 12.0F2." R. 3061. The ALJ carefully reviewed the questionnaires which were used by each of the medical sources. She concluded that the questionnaires' definitions of limitation levels were incompatible with the social security standards because a limitation defined as "moderate" by the questionnaire "would be work preclusive" under the social security standards. R. 3066. As she explained, "[m]oderate by the form's definition suggests interference up to 1/3 of the workday which is a wide range leading to noncompetitive work before it even approaches 1/3 of the workday." R. 3061. Under the social security standards, a moderate limitation is not work preclusive. 20 C.F.R. § 404, Subpart P, Appendix 1, 12.00(F)(2). The incompatibility of the definitions was not the ALJ's sole reason for discounting any of the medical opinions but was one factor which she considered. It was proper for her to do so. 20 C.F.R. § 404.1527(c)(2) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that a medical source has . . . [is a] relevant factor[] that [ALJs] will consider in deciding the weight to

4

give to a medical opinion.").

Additionally, Plaintiff argues that the ALJ erred in her consideration of the medical opinions' supportability because the medical sources checked "signs and symptoms" to support their opinions. R. 1026, 1164, 1211, 1795, 4299. When evaluating a medical opinion's supportability, an ALJ must consider the relevant evidence presented by a medical source and the explanation provided for the medical opinion. 20 C.F.R. § 404.1527(c)(3). Despite Plaintiff's claims that the checked signs and symptoms weighed in favor of supportability, the medical providers did not explain why certain signs and symptoms were checked. *Id*. *See Winkelman v. Saul*, 835 Fed. Appx. 889, 892 (7th Cir. 2021) ("Check-box forms, unexplained, are generally weak evidence."). Plaintiff also claims that the ALJ overlooked evidence that the medical opinions were consistent with the record and improperly relied on Plaintiff's improvement with treatment. However, the ALJ pointed out specific findings from the medical sources, including Plaintiff's improvement with treatment, that she found inconsistent with the medical sources' opinions. R. 3061-3066. The ALJ articulated her consideration of each medical opinion's supportability and consistency with substantial evidence, and this Court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). When reviewing an ALJ's weighing of medical opinions, this Court's inquiry "is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527 . . . and built an 'accurate and logical bridge' between the evidence and [her] conclusion." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013). The ALJ met that standard here.[3]

**VA Disability Determination**

Plaintiff argues that the ALJ failed to adequately consider the disability determination of the Department of Veteran Affairs ("VA"). The VA determined that Plaintiff is "unemployable due to [his] service-connected disabilities." R. 566, 605. Pursuant to social security regulations, "[a] determination made by another agency that [a claimant is] disabled or blind is not binding on [the ALJs]." 20 C.F.R. § 416.904 (effective until March 27, 2017). The Seventh Circuit has also acknowledged that the VA "requires less proof of disability than the Social Security Administration does." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir 2006). Nevertheless, for claims filed prior to March 27, 2017,[4] ALJs were required to "give the VA's determination of disability 'some weight.'" *Id*. The ALJ gave the VA's determination of Plaintiff's disability "little

---

[3] The ALJ gave some weight to the functional assessments of state agency psychological consultants, but did not consider or give any weight to the consultants' evaluation of the paragraph B criteria. R. 3066. Plaintiff argues that the ALJ erred by giving greater weight to non-examining medical sources than to treating medical sources. However, the social security regulations in effect at the time Plaintiff filed his claim state, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p. The ALJ did not reject the opinions of the treating and examining sources based on the contradictory opinions of the non-examining consultants. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017). She articulated the reasons for the weight she gave each medical opinion, and, therefore, the Court "must allow that decision to stand." *Elder*, 529 F.3d at 415.

[4] For claims filed after March 27, 2017, the Social Security Administration "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 416.904 (2017).

5

to no weight." R. 3058.

Plaintiff claims that the ALJ did not give the VA's disability determination the required weight and improperly discredited it due to the difference between the VA disability standards and the social security disability standards. The Seventh Circuit in *Allord* did not define "some weight," but indicated that "some weight" was more than "no weight" and less than "great weight." *Id*. As the ALJ gave the VA's disability determination more than no weight, the Court cannot conclude that the ALJ failed to meet the *Allord* requirement. Plaintiff also claims that the ALJ improperly gave the VA's determination minimal weight solely because it "was made under standards that differ from those in Social Security disability law." R. 3057. Plaintiff cites the Seventh Circuit's opinion in *Hall v. Colvin*, for the proposition that differences between the VA disability standards and the social security standards are "small" and, therefore, ALJs should not rely on differences between the standards for discrediting VA determinations. 778 F.3d 688, 691 (7th Cir. 2015).[5] In this case, the ALJ did not rely solely on the difference in standards but stated that one of the reasons she gave the VA determination such little weight was because "[o]ther evidence . . . [wa]s more probative of [Plaintiff's] abilities and limitations." R. 3057-3058. Even if the ALJ erred by giving the VA's disability determination little to no weight, any error was harmless because the ALJ thoroughly reviewed the medical records, the medical opinions, and the claimant's testimony sufficient to show her reasoning. *See Crick v. Kijakazi*, No. 20 CV 0016, 2022 WL 3098389, at *3 (E.D. Wisc. Aug. 4, 2022) (remanding, but noting that "District courts throughout the Seventh Circuit have found harmless error where an ALJ does not discuss a VA rating but does 'provide[ ] a thorough review of medical opinions by VA-employed physicians'"); *Weathington v. Colvin*, No. 12 CV 00410, 2013 WL 5321518, at *11 (S.D. Ind. Sept. 20, 2013) (finding ALJ's failure to consider VA determination harmless where the ALJ considered the opinions of VA doctors).

**<u>Subjective Symptoms Analysis</u>**

Another issue raised by Plaintiff is that the ALJ erred in evaluating his subjective symptoms. ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*.

In this case, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical record and were inconsistent with "his own reports in treatment

---

[5] As Plaintiff quotes, the Seventh Circuit stated that the VA's disability determination that the *Hall* claimant was "totally unemployable by reason of his disability . . . equate[d] to a finding of total disability under the regulations of the Social Security Administration." 778 F.3d at 691. In this case, the VA did not determine that Plaintiff was "totally unemployable" when it initially awarded him disability benefits as of May 30, 2013. R. 566, 606, 898. The record is unclear as to when exactly the VA determined that Plaintiff was "totally unemployable," but it was after the alleged onset date in this case. R. 566, 1076. It is also unclear from the record if this finding retroactively applied.

records, his treatment history and compliance issues, his providers' notes of inconsistencies and some malingering, his objective findings on exam, testing and imaging, and his extensive activities of daily living." R. 3050. Plaintiff claims that the ALJ did not support this finding with substantial evidence. He argues that the ALJ erred by suggesting that Plaintiff sought treatment just to gain social security benefits. Despite Plaintiff's assertion that the Commissioner encourages claimants to ask providers to support social security claims, the language he cites encourages claimants to ask providers to "lay out in plain language exactly what it is that the claimant's condition prevents [him] from doing." *Punzio v. Astrue*, 630 F.3d 704, 712-713 (7th Cir. 2011). This is different than asking a provider to write a letter "proving [a claimant] cannot work." R. 1667. Plaintiff also fails to mention that, as the ALJ considered, Plaintiff did not just ask one provider for a letter "proving he cannot work," but sought out other providers after "his psychiatrist and primary care physician [would] not provide such a letter." R. 3058, 1667. Plaintiff also contends that the ALJ erred in relying on Plaintiff's "extensive activities of daily living." R. 3050. However, an ALJ may properly consider a claimant's daily activities when evaluating subjective symptoms. 20 C.F.R. § 404.1529. Plaintiff has pointed to no evidence showing that the ALJ's conclusion was "patently wrong."[6] *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) ("An ALJ's credibility determination is entitled to deference, and we will overturn a credibility finding only if it is 'patently wrong.'").

**<u>New Evidence</u>**

Plaintiff further argues that remand is necessary because the Appeals Council improperly issued nothing more than a boilerplate denial after considering new evidence. Under the social security regulations, the Appeals Council will review a case if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). If the Appeals Council denies review because new evidence is "'non-qualifying under the regulation,' the Court conducts a de novo review," but if the Appeals Council found the new evidence qualifying but "denied review because the ALJ's decision was not contrary to the weight of the evidence, then the Council's decision not to engage in plenary review is discretionary and unreviewable." *Davis v. Commissioner*, No. 20 CV 303, 2021 WL 2451908, at *4 (N.D. Ind. June 16, 2021). Courts in the Seventh Circuit are split as to whether the Appeals Council finding that additional evidence "does not show a reasonable probability that it would change the outcome of the decision," is a "legal determination of materiality or a discretionary weighing of the evidence." *Id*. Compare *Colleen C. o/b/o Daniel I. v. Saul*, No. 18 CV 1838, 2019 WL 3986077, at *2–3 (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the Appeals Council rejected the new evidence as non-qualifying and therefore de novo review was appropriate); with *Jandt v. Saul*, No. 18 CV 737, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable).

In this case, Plaintiff takes specific issue with the Appeals Council's conclusion that Dr. Ryser's supplemental opinion did "not show a reasonable probability that it would change the

---

[6] Also, while Plaintiff is correct that none of the medical opinions from his psychiatrists or psychologists identified him as a malingerer, Dr. Phelps's opinion stated that it was "unclear" if Plaintiff was a malingerer because it had not been "formally assessed." R. 1210. Dr. Phelps's psychological evaluation also noted that Plaintiff's nurse practitioner had identified him as a malingerer at least with respect to his physical limitations. R. 1217.

outcome of the decision." R. 1930. Given the split in the Seventh Circuit, this Court will review the Appeals Council's conclusion de novo. On the record presented, this Court is satisfied that the Appeals Council correctly determined that Dr. Ryser's supplemental opinion "may have clarified her opinion but it did not overall change it." R. 1930. Dr. Ryser did not provide the supplemental opinion after further evaluation of Plaintiff but continued to rely on the one-time evaluation conducted on June 9, 2020, which was the subject of her original opinion. R. 3077-3087. In fact, Dr. Ryser even stated that the purpose of the supplemental opinion was "to further substantiate / explain the information contained in my 6-9-20 report." R. 3087. The opinion does not remedy many of the problems the ALJ initially found with the original opinion, including the fact that Dr. Ryser relied "on the claimant's self-reports," with the supplemental opinion confirming that the "6-9-20 report was based on the examinee's subjective reports of symptoms and limitations dating even prior to 12-4-15." R. 3065. Additionally, it is worth noting that the ALJ had given some weight to Dr. Ryser's original functional capacity assessment, noting that "the deficits supported by objective evidence" were addressed in Plaintiff's residual functional capacity. R. 3065. Therefore, the Court concludes that there is no reasonable probability that Plaintiff's new evidence would change the outcome of the decision denying him disability benefits under the Social Security Act.

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.


Date:  March 21, 2025                    ENTER:


                                         _Margaret J. Schneider_
                                         United States Magistrate Judge